**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **STEVEN JOHN MAHER,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **A-11-CV-568-LY** |
| | § | |
| **RICK THALER, Director,** | § | |
| **Texas Department of Criminal Justice** | § | |
| **Correctional Institutions Division,** | § | |
| **Respondent.** | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are pro se Petitioner Steven John Maher's Petition for Writ of Habeas Corpus (Document 1), Answer with Brief in Support of Respondent, Rick Thaler, Director of the Texas Department of Criminal Justice, Correctional Institutions Division (Document 21), and Petitioner's Reply to Respondent's Answer (Document 22).  For the reasons set forth below, the undersigned concludes that the petition should be denied.

**STATEMENT OF THE CASE**

**I.   PROCEDURAL HISTORY**

The Director has custody of Maher pursuant to the judgment and sentence of 27th District Court of Lampasas County, Texas, in Cause Number 7959, styled *State of Texas v. Steven John*

*Maher. Ex parte Maher*, No. WR-72,410-01, at 48-49.[1]  Maher was charged with aggravated assault

with a deadly weapon and obstruction and entered a plea of not guilty.  *Id.* at 47-48.  He was then

tried by a jury, which found him guilty.  *Id.* at 48.  After finding that Maher had a previous felony

conviction, the court sentenced him to thirty-five years of confinement for the assault conviction.

*Id.* at 48-49.[2]

Maher appealed, arguing that the evidence supporting the aggravated assault conviction was

legally insufficient and that the trial court erroneously admitted extraneous misconduct evidence.

*Maher v. State*, No. 03-07-00179-CR, 2008 WL 2736884, at *1 (Tex. App.–Austin, July 10, 2008,

pet. ref'd).  The Third Court of Appeals of Texas affirmed his conviction for aggravated assault, and

reversed his obstruction conviction.  *Id.*  Maher subsequently filed a petition for discretionary review,

which was refused.  *Maher v. State*, PDR No. 1042-08 (Tex. Crim. App. Dec. 17, 2008).  He then

filed a state habeas application challenging his conviction that was denied by the Texas Court of

Criminal Appeals by order.  *Ex parte Maher*, No. WR-72,410-01, 2009 WL 3049617, at *1 (Sept.

23, 2009).  Maher subsequently filed his federal habeas petition in January 2010.  Pet. at 9.

## II.   FACTUAL BACKGROUND

The court of appeals summarized the evidence presented at Maher's trial as follows:

[Victim Michelle] Collins testified that she, appellant, and Joseph Jacobs were at a
trailer house in rural Lampasas County on September 29, 2006, "talking and basically
having fun."[1]  Collins said that she and appellant "started kind of having a little bit
of an argument" over a broken glass pipe of the sort used to smoke narcotics.  She

---

[1]  Citations to pleadings and documents in the state-court habeas record appear as *Ex parte Maher*, Application No. WR-72,410-01, followed by a page number.

[2]  Maher was also convicted of obstruction, but the Third Court reversed that conviction on appeal.  *Maher v. State*, No. 03-07-00179-CR, 2008 WL 2736884, at *4 (Tex. App.–Austin, July 10, 2008, pet. ref'd) (reversing because erroneously admitted extraneous misconduct evidence likely influenced jury's determination of intent required for obstruction charge).

testified that she went to the bedroom to avoid the argument, but appellant followed, jumped on her, and began to choke her.  Collins responded by biting appellant on the chest and striking him with her fists, and he began to slam her head on the floor. Jacobs heard the ruckus, came to the bedroom, and separated the combatants.

[1] The trailer was the residence of George Truitt. Truitt testified that appellant was staying there while Truitt was out of town on a trip.

When this fight ended, appellant left the room and Collins began to pack her things to leave.  When Collins and Jacobs went outside, however, appellant was sitting in Collins's car.  Collins asked appellant to get out of the car, but he refused.  Collins testified that appellant had a "buck knife between him and the seat."[2]  This knife, introduced in evidence, was a hunting knife with a five-inch blade.  Collins said that this encounter "became another fight," during which one of her car windows "got busted out."  Collins acknowledged that she broke the window with her fist.  Finally, appellant got out of the car, and Collins and Jacobs drove away.

[2] Jacobs testified that while Collins was trying to get appellant out of her car, appellant asked Jacobs to take the knife before he did "something stupid."

Collins drove to her father's house where a package for appellant had been delivered.[3]  Collins decided to take this package to appellant "because I didn't want anything to do with him anymore."  When Collins and Jacobs returned to the trailer, appellant "walked around the side of the house" carrying the knife and a hatchet. Collins testified that she "pretty much got the idea that [appellant] was not in a happy mood" and sensed that "something was going to happen."  Trying to stay away from appellant, she threw him the package.  When appellant opened the package, Collins saw that it contained "dope."  During cross-examination, Collins said that this "dope" was methamphetamine, which she could recognize because she had been a user of the drug in the past.   Collins testified that appellant, referring to the methamphetamine, "accused me of stealing it," and she denied it.[4]  She added, "And that's when he got pissed off or got mad or whatever."

[3] The package was addressed to Collins at her father's address, but Collins had been told by appellant that a package for him was being sent to her.  She testified that she did not know what the package contained.

[4] Jacobs testified that appellant told Collins that his "seven grams better be here."

3

Collins testified that she was also "a little bit pissed off" because appellant had had the methamphetamine mailed to her father's house, and that she told appellant that she was going to the police. Asked if appellant's demeanor changed when she told him this, Collins answered, "He was already mad as it was. I don't think he could have got any madder."

Collins testified that when she tried to get back in her car to leave, appellant, still armed with the knife and hatchet, blocked her way. Using the knife, appellant "started bashing out [Collins's] driver's window." Collins answered affirmatively when asked if she was afraid that appellant would hurt her. After breaking the car window, appellant threw the knife into the car. Collins said that she then pulled her own pocket knife, and appellant backed away from her so that she could get in her car. As she prepared to drive away with Jacobs, appellant threw the hatchet, which "came plowing through [Collins's] back window" and "hit [the] console in between" the front seats. Collins returned to her father's house and called the police.

*Maher*, 2008 WL 2736884, at *1-2.

## III.   MAHER'S CLAIMS FOR RELIEF

Maher contends that he is entitled to habeas relief based on the following grounds:

1.    Denial of the right to present a defense (Claim 1);

2.    Obstruction of the right to present a defense (Claim 2);

3.    Denial of the right to compulsory process (Claim 3);

4.    Tainted jury (Claim 4);

5.    Prosecutorial misconduct (Claim 5);

6.    Violation of the right against self-incrimination (Claim 6);

7.    Denial of due process at trial (Claim 7);

8.    Unconstitutional sentence (Claim 8);

9.    Ineffective assistance of counsel on appeal (Claim 9); and

10.    Actual innocence based on newly discovered evidence (Claim 10).

Pet. at 7-8.

4

## IV.   EXHAUSTION OF STATE REMEDIES, STATUTE OF LIMITATIONS, AND SUCCESSIVE PETITION

The Director concedes that Maher's petition is timely and is not subject to the successive petition bar.  Answer at 5; *see also* 28 U.S.C. § 2244(b), (d).  The Director also admits that Maher has sufficiently exhausted his state court remedies for the claims presented.  Answer at 5; *see also* 28 U.S.C. § 2254(b).

## DISCUSSION

## I.   REVIEW UNDER THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996

The Supreme Court has summarized the basic principles that have grown out of the Court's many cases interpreting the 1996 Antiterrorism and Effective Death Penalty Act.  *See Harrington v. Richter*, – U.S. –, 131 S. Ct. 770, 783-85 (2011).  The Court has noted that the starting point for any federal court in reviewing a state conviction is 28 U.S.C. § 2254, which states in part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The Court noted that "[b]y its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)."  *Harrington*, 131 S. Ct. at 784.

5

One of the issues *Harrington* resolved was "whether § 2254(d) applies when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Id.* Following all of the Courts of Appeals' decisions on this question, *Harrington* concluded that the deference due a state court decision under § 2554(d) "does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* (citations omitted). The Court noted that it had previously concluded that "a state court need not cite nor even be aware of our cases under § 2254(d)." *Id.* (citing *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*)). When there is no explanation with a state court decision, the habeas petitioner's burden is to show there was "no reasonable basis for the state court to deny relief." *Id.* And even when a state court fails to state which of the elements in a multi-part claim it found insufficient, deference is still due to that decision, because "§ 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." *Id.*

As *Harrington* noted, § 2254(d) permits the granting of federal habeas relief in only three circumstances: (1) when the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the Supreme Court; (2) when the earlier decision "involved an unreasonable application of" such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court. *Id.* at 785 (citing 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523 (2000)). The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Dowthitt v. Johnson*, 230 F.3d 733, 740 (5th Cir. 2000) (quotation and citation omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.

*Id.* at 740-41 (quotation and citation omitted). Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant the writ "if the state court identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 741 (quotation and citation omitted). The provisions of § 2254(d)(2), which allow the granting of federal habeas relief when the state court made an "unreasonable determination of the facts," are limited by the terms of the next section of the statute, § 2254(e). That section states that a federal court must presume state court fact determinations to be correct, though a petitioner can rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). But absent such a showing, the federal court must give deference to the state court's fact findings. *Id.*

## II.   MAHER'S CLAIMS

Having independently reviewed the state-court record and Maher's asserted claims, the Court finds nothing unreasonable or contrary in the state court's application of clearly established federal law or in its determination of facts in light of the evidence, as discussed below.

### A.   Right to Present a Defense (Claims 1 & 2)

Maher claims that he was denied his right to present a defense and also contends that this right was obstructed because he was forced to represent himself at trial and after being denied critical discovery and *Brady* material, was denied a continuance to properly prepare his defense. Pet. at 7. He also contends that his right to present a defense was obstructed by his standby counsel's alleged

failure to advise Maher that he had received a plea offer. *Id.* at 7; Reply at 3-4. The Director contends that Maher fails to present evidence to overcome the presumption that the state court's fact findings on these claims were correct. Answer at 10. The Director also asserts that Maher's *Brady* claim must fail because he does not identify any favorable material evidence or show that any such evidence was withheld by the prosecution after an appropriate request. *Id.* at 9-11.

The state habeas court addressed the claims regarding Maher's right to present a defense as follows:

> [Maher] first assert[s] that he was denied the right to present a defense. [He] complains that the State did not provide him with discovery on a timely basis nor did the State secure the identity of a witness, "Josh." Other than speculating that "Josh" might have relevant testimony, [Maher] offers no basis for relief. Based on trial testimony, Maher personally knew "Josh." [Maher] did not attempt to subpoena "Josh" and does not relate any anticipated defense testimony. [Maher] does not offer any basis to claim photographs entered in the evidence were altered, and he had the opportunity to cross-examine sponsoring witnesses as to those photographs. [Maher] was not denied the right to present a defense.
>
> [Maher] second assert[s] that his right to represent himself was obstructed. Throughout the pendency of trial, the Court repeatedly counseled [Maher] about the dangers of self-representation. [Maher] claimed to have legal training and claimed to be a certified paralegal. [He] now complains that he did not have adequate time to prepare for trial and the Court admonished him before the jury about continuing with overruled objections. [Maher] repeatedly tried to introduce irrelevant information and evidence to the jury. [Maher] compelled the Court to admonish him by his behavior and trial antics before the jury. [Maher] was allowed to represent himself and now complains that his representative antics were not effective.

*Ex parte Maher*, No. WR-72,410-01, Supp., Findings of Fact & Conc. of Law, at 1-2 (Sept. 11, 2009). Maher fails to present clear and convincing evidence, or any evidence, rebutting the presumption under the AEDPA that the state court's determinations underlying its rejection of these two claims were correct. *See* 28 U.S.C. § 2254(e)(1).

Moreover, Maher does not support his vague allegation that the prosecution failed to provide exculpatory evidence. *See* Pet. at 7. To prevail on a due process claim brought under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963), Maher must show that the prosecution: (1) suppressed evidence; (2) that was favorable to the defense; and (3) was material. *See, e.g., Mahler v. Kaylo*, 537 F.3d 494, 500 (5th Cir. 2008). Evidence is material only if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383 (1985); *accord Banks v. Thaler*, 583 F.3d 295, 311 (5th Cir. 2009), *cert. denied*, – U.S. –, 130 S. Ct. 2092 (2010); *see also Kyles v. Whitley*, 514 U.S. 419, 433-34, 115 S. Ct. 1555, 1565-66 (1995). The Supreme Court elaborated on the materiality standard in *Kyles*, explaining that "[a] 'reasonable probability' of a different result is . . . shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial'" and when "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 434, 435, 115 S. Ct. at 1566 (quoting *Bagley*, 473 U.S. at 678, 105 S. Ct. at 3381). In addition, a *Brady* claimant must show that the information was not otherwise available through due diligence. *See, e.g., United States v. Aubin*, 87 F.3d 141, 148-49 (5th Cir. 1996).

Maher has not pointed to any favorable material evidence, much less demonstrated that it was withheld by the State after an appropriate request.

Because Maher's arguments on the factual findings do not prevail, the Court should find no basis for habeas relief in the state court's underlying factual findings. *See* 28 U.S.C. § 2254(d), (e)(1). In addition, the Court should conclude that Maher fails to show that the state habeas court's

denial of his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  *See* 28 U.S.C. § 2254(d).

### B.   Compulsory Process (Claim 3)

Maher contends that he was denied the right to compulsory process.  Pet. at 7.  The Director argues that the claim lacks merit because Maher never filed an application for a subpoena, leaving him without a basis for his complaint.  Answer at 11.  The state court found that Maher never filed an application for a subpoena.  *Ex parte Maher*, No. WR-72,410-01, Supp., Findings of Fact & Conc. of Law, at 2.  Maher has not put forward clear and convincing evidence to overcome the presumption that the state court's finding was correct, and this claim for relief should be denied as well.  *See* 28 U.S.C. § 2254(d), (e)(1).

### C.   Jury Taint (Claim 4)

Maher contends that his jury was tainted because his mother allegedly informed one of the jurors that Maher had a past criminal record and because he was repeatedly rebuked by the judge during the trial, in front of the jury.  Pet. at 7A.  The Director asserts that Maher's claim of jury taint is factually inaccurate.  Answer at 12.  He also asserts that Maher fails to identify any specific "rebuke" that "tainted" the jury or demonstrate that the trial court's comments were misplaced.  *Id.*

The Sixth Amendment, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, guarantees that an accused shall enjoy the right to a trial by an impartial jury.  *See Parker v. Gladden*, 385 U.S. 363, 364, 87 S. Ct. 468, 470 (1966).  The state habeas court found that "[Maher]'s complaint is inconsistent with the affidavit of [Maher]'s mother and there is no evidence that the conversation influenced the jury in any way."  *Ex parte Maher*, No. WR-72,410-01, Supp., Findings of Fact & Conc. of Law, at 2.  Maher does not present clear and convincing

evidence to overcome the presumption that the state court's finding was correct.  Indeed, in the affidavit by Maher's mother that was submitted with his state habeas application, it is not clear that the juror with whom Maher's mother spoke was serving in Maher's trial.  *See Ex parte Maher,* No. WR-72,410-01, Mem. in Support of Pet. for Writ of Habeas Corpus, Ex. 4 (Aff. of J. Maher (Apr. 1, 2009)).  In addition, Maher fails to show that the judge's admonishments caused the jury to be tainted.  He has not pointed to any specific comments that might have tainted the jury nor has he shown that any "rebuke" was improper.

The Court should conclude that Maher fails to present clear and convincing evidence, or any evidence, rebutting the presumption that the state court made correct determinations underlying its rejection of this claim, *see* 28 U.S.C. § 2254(e)(1), and also conclude that Maher fails to show that the state habeas court's denial of relief was unreasonable under, or contrary to, clearly established federal law as established by the U.S. Supreme Court.

### D.      Prosecutorial Misconduct and Right Against Self-Incrimination (Claims 5 & 6)

Maher contends that prosecutorial misconduct occurred through a failure to disclose *Brady* material, giving notice of intent to offer evidence of other bad acts, and use of a 25 year-old prior conviction . Pet. at 7A.  He also asserts that his right against self-incrimination was violated by use of the 25 year-old conviction in an attempt to preclude Maher from explaining at trial what happened on the day at issue.  *Id.*  The Director argues that Maher's claim must fail because he does not demonstrate that the State had any exculpatory evidence, Maher did not testify, and there was nothing improper in the prosecution's giving notice of evidence of other bad acts.  Answer at 13.

With regard to these claims, the state habeas court found:

[Maher] complains that the State gave notice of evidence of other bad acts.  [Maher] now claims that this notice prevented him from taking the stand in his own defense.

As [Maher] did not take the stand, he did not incriminate himself.  By giving notice
of the conviction(s), the State gave [Maher] the opportunity to evaluate the risk of
taking the stand and being subject to cross-examination and the possible admission
of his criminal history.

*Ex parte Maher*, No. WR-72,410-01, Supp., Findings of Fact & Conc. of Law, at 2.  Because Maher

offers only conclusory assertions that his rights were violated, he does not demonstrate how the state

habeas court's determination was an unreasonable or contrary application of federal law, as

established by the U.S. Supreme Court.  *See* 28 U.S.C. § 2254(d).  This Court should deny relief on

these claims.

### E.    Due Process (Claim 7)

Maher claims that he was denied due process in how his case proceeded to trial.  Pet. at

7B-7C.  He argues that his ability to prepare for trial was impaired by the prosecution's insufficient

notice of witnesses and motions, the denial of a continuance, incomplete discovery, a rush to

complete the trial, an increase in his bond, and the trial's one-sided character.  Pet. at 7B-7C.  The

Director contends that this claim should fail because Maher offers only conclusory and vague

arguments.  Answer at 13-14.

With regard to this claim, the state habeas court found:

[Maher]'s fifth ground claims a non-specific violation of due process of law.  [He]
complains of the timing of the production of discovery.  [Maher] does not and did not
offer any reason why the timing of the production of discovery or trial notices
hampered his ability to prepare a defense or how additional time would have [led] to
a different result.

*Ex parte Maher*, No. WR-72,410-01, Supp., Findings of Fact & Conc. of Law, at 2. Maher fails to

explain, much less demonstrate, how the state court's determination was an unreasonable or contrary

application of federal law as established by the U.S. Supreme Court.  *See* 28 U.S.C. § 2254(d).

Accordingly, the Court should deny relief on this claim as well.

F.        **Sentence (Claim 8)**

Maher claims that his sentence is unconstitutional, apparently based on an equal-protection argument that he was sentenced to what amounts to a life sentence whereas other individuals convicted of more severe offenses, including offenses involving physical injury and death, have been sentenced to the same or lesser terms.  Pet. at 7B.  The Director argues that Maher fails to show that he was treated differently from a similarly situated group of people.  Answer at 14-15.  The Director also asserts that  Maher's sentence is legal because it is within the authorized statutory range for his offense.  *Id.*

The state habeas court rejected the claim as being within the statutorily authorized range of punishment:

> [Maher] cites the court to the sentences of other individuals to suggest that his sentence is unfairly high.  [Maher]'s sentence is within the range of punishment.

*Ex parte Maher*, No. WR-72,410-01, Supp., Findings of Fact & Conc. of Law, at 2.  The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV.  To make such a claim, Maher must have demonstrated that similarly situated persons are subject to disparate treatment without a rational basis.  *See, e.g., United States v. Abou-Kassem*, 78 F.3d 161, 165 (5th Cir. 1996); *see also City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439-42, 105 S. Ct. 3249, 3254-56 (1989).  Maher failed to identify similarly situated individuals, and his claim of an equal protection violation thus necessarily failed.  Additionally, Maher does not suggest that his sentence is not within the authorized statutory range for his offense,[3] nor that the statutorily defined

---

[3]  Maher was convicted of aggravated assault, a second-degree felony, which was enhanced by a prior felony conviction.  *Ex parte Maher*, No. WR-72,410-01, at 47-48; TEX. PENAL CODE § 22.02.  The statutorily authorized sentencing range for his conviction was five to ninety-nine years,

ranges of sentences result in disparate treatment of similarly situated individuals.  The state habeas

court's denial of relief on this claim was not an unreasonable or contrary application of federal law.

*See* 28 U.S.C. § 2254(d).  This Court should deny relief.

### G.     Ineffective Assistance of Appellate Counsel (Claim 9)

Maher contends that he received ineffective assistance of appellate counsel because counsel

did not raise certain claims on appeal.  Pet. at 7B.  The Director asserts that Maher fails to identity

any arguments that appellate counsel should have raised, much less arguments that were stronger

than those actually presented to the appellate court.  Answer at 16.

To succeed on an ineffective-assistance-of-counsel-on-appeal claim, a petitioner must satisfy

the two standards set out in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984).  *See*

*Smith v. Robbins*, 528 U.S. 259, 286, 120 S. Ct. 746, 764 (2000).  A petitioner must demonstrate that

appellate counsel was deficient, and that the deficiency prejudiced his appeal.  *See Strickland*, 466

U.S. at 687, 104 S. Ct. at 2064.  To demonstrate the first requirement, deficiency on the part of

counsel, a petitioner must show that counsel "fail[ed] to find arguable issues to appeal–that is, that

counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them."

*Smith*, 528 U.S. at 286, 120 S. Ct. at 764.  Appellate counsel "need not (and should not) raise every

nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of

success on appeal."  *Id.* at 288, 120 S. Ct. at 764 (citing *Jones v. Barnes*, 463 U.S. 745, 103 S. Ct.

3308 (1983)).  Thus, it is possible that an ineffectiveness claim may be "based on counsel's failure

to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent."  *Id.* (citing

*Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).  To demonstrate that a failure to raise an issue

---

or life, and up to a $10,000 fine.  *See* TEX. PENAL CODE § 12.42(b).  He was sentenced to thirty-five
years' imprisonment.  *Ex parte Maher*, No. WR-72,410-01, at 48.

was deficient, a petitioner must show that a particular nonfrivolous issue was clearly stronger than issues that counsel did present.  *Id.*

Under the second *Strickland* prerequisite, appellate counsel is ineffective when counsel's errors are prejudicial, that is, when there is a reasonable probability that but for the error, the ultimate result would have been different.  To demonstrate prejudice, a petitioner must show that, but for appellate counsel's deficient performance, he would have prevailed on appeal.  *Id.* at 286,

> Regarding this claim, the state habeas court found:
>
> [Maher] does not identify any claimed deficiencies in appellate counsel performance. [Maher] claims he wished to raise other issues, but presents no such issues in his application.  [Maher]'s counsel did achieve the reversal of one count of conviction, that was subsequently dismissed by the State.

*Ex parte Maher*, No. WR-72,410-01, Supp., Findings of Fact & Conc. of Law, at 3.  Maher failed to identify particular arguments that appellate counsel should have raised, but did not.  *See* Pet. at 7B.  Maher also failed to demonstrate any prejudice.  Indeed, his counsel was successful on appeal in obtaining a reversal of his conviction for obstruction.

Because Maher fails to demonstrate by clear and convincing evidence that the state habeas court's findings were not entitled to the AEDPA's presumption of correctness or that its rejection of this claim involved an unreasonable application of the established law of *Strickland*, or one contrary to that established law, this Court should deny relief.  *See* 28 U.S.C. § 2254(d), (e)(1).

### H.    Actual Innocence (Claim 10)

Maher claims that based on new evidence, he is actually innocent of the crime for which he was convicted. Pet. at 8.  The Director counters that freestanding claims of actual innocence are not cognizable on federal habeas review, and in any event, Maher provides no newly discovered evidence.  Answer at 17.

The state court found:

> [Maher] claims that he is now in possession of a letter written by the victim of his
> offense that constitutes a defense.  The letter purports to make menacing remarks that
> [Maher] possibly believes justify his assaultive actions.  [Maher] admits he was
> aware of the existence of the letter prior to the offense and prior to trial.  The letter
> is not newly discovered evidence given [Maher]'s knowledge of the letter prior to the
> offense and prior to trial.  [Maher] did not cross examine the victim of the offense,
> about the letter, threats, or menacing remarks.

*Ex parte Maher*, No. WR-72,410-01, Supp., Findings of Fact & Conc. of Law, at 3.  Maher fails to

demonstrate by clear and convincing evidence that the state habeas court's finding was incorrect.

*See* 28 U.S.C. § 2254(e)(1).  Without any newly discovered evidence, he is unable to advance his

claim of actual innocence.

Even if Maher presented newly discovered evidence, claims of actual innocence are

ordinarily not cognizable on federal habeas review and do not state a ground for relief "absent an

independent constitutional violation occurring in the underlying state criminal proceeding."  *Herrera*

*v. Collins*, 506 U.S. 390, 400, 113 S. Ct. 853, 860 (1993); *Boyd v. Puckett*, 905 F.2d 895, 896-97

(5th Cir. 1990).  Thus, the claim of innocence is not itself a constitutional claim on federal habeas

review, but acts instead as "a gateway through which a habeas petitioner must pass to have his

otherwise barred constitutional claim considered on the merits."  *Schlup v. Delo*, 513 U.S. 298, 314,

115 S. Ct. 851, 861 (1995) (quoting *Herrera*, 506 U.S. at 404, 113 S. Ct. at 862).  Moreover, "even

if a truly persuasive claim of actual innocence could be a basis for relief, the Supreme Court made

clear that federal habeas relief would only be available if there was no state procedure for making

such a claim."  *Graves v. Cockrell*, 351 F.3d 143, 151(5th Cir. 2003).

The state court's rejection of this claim was not an unreasonable application of federal law

as determined by the Supreme Court, nor was it based on underlying factual findings undeserving

of the presumption of correctness.  *See* 28 U.S.C. §2254(d), (e)(1).  The Court should deny relief.

**RECOMMENDATION**

It is recommended that Maher's application for writ of habeas corpus be denied.

**CERTIFICATE OF APPEALABILTY**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000).  In cases in which a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of Maher's Section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed.  *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029,

17

1034 (2003) (citing *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604).  Accordingly, it is respectfully recommended that the Court not issue a certificate of appealability.

## OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The district court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall also bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 2nd day of February, 2012.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE